STATE, Respondent, v. McCARTY, Appellant.

*No. State 161.  Argued June 5, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 819.)

For the appellant there was a brief by *D'Amato, Nettesheim & Cusack* and *Neal P. Nettesheim,* all of Waukesha, and oral argument by *Neal P. Nettesheim.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *Roger P. Murphy,* district attorney of Waukesha county.

CONNOR T. HANSEN, J. During the early morning hours of August 15, 1967, a Brookfield police officer, while on routine patrol, discovered that Papa Joe's Cocktail Lounge in Brookfield, Waukesha county, Wisconsin, had been forcibly entered. The tavern owner, who had given no one, including the defendant, consent to enter his closed and locked premises, came to the scene. The tavern office had been ransacked and the owner discovered that a Pierto Beretta .765-caliber automatic gun, bearing serial number 45915, with holster, had been taken from the office desk. A cash register, the jukebox and the cigarette machine had been pried open. Between $300–$450 in cash was also missing from the premises. It was for this crime the defendant was convicted and judgment entered on March 20, 1969.

On August 15, 1967, a telephone call and a teletype were received by the Milwaukee police department from the defendant's parole officer. The defendant was wanted by Wisconsin authorities as a parole violator and was also wanted for questioning by Rochester, Minnesota authorities. The Milwaukee police department was informed that the defendant was believed to be heading for Milwaukee in a Hertz-Rent-A-Car. The defendant was subsequently located, taken into custody for parole violation, and the car which defendant was driving was searched. Found in the trunk of the car was a rifle and a quantity of ammunition. The defendant was arrested at about 7 p. m. on August 15, 1967.

Defendant was conveyed to the safety building in a patrol wagon and was thereafter taken to the detective division for questioning at about 7:45 p. m. He was advised of his constitutional rights, and refused to talk about the alleged Minnesota offense. He was required to place his belongings on the table and these included $361 in cash and some keys. One of these keys was to a motel room in Wauwatosa.

*Unlawful search and seizure.*

After defendant's identity had been established and he was told he would be held for his parole officer, the defendant and four detectives went to the defendant's motel room in Wauwatosa. At the motel room the defendant's personal belongings were gathered together and among them was a brown satchel which contained some tools, a .38-caliber revolver and a .765 Beretta automatic, in a brown holster. The latter was subsequently identified as the gun and holster stolen from Papa Joe's Cocktail Lounge in Waukesha county. Also found was a pry bar which was later admitted into evidence (Exhibit 5) and was, in the opinion of the toolmark identification expert of the state crime laboratory, the tool which left marks on Exhibit 1, the jukebox coin return container found in Papa Joe's that had been pried away from the tavern jukebox. Defendant, in motions before the trial court and now on appeal, argues that the articles seized from his motel room were improperly admitted into evidence at the trial in that defendant did not consent to the search.

Defendant made a pretrial motion to suppress the evidence found in the motel room. A hearing on this motion was held in Branch II of the Waukesha county court, the Hon. WILLIAM G. CALLOW, county judge, presiding. Testimony was taken after which Judge CALLOW denied the motion to suppress and found that the defendant asked to be taken to his motel room to reclaim his possessions. Subsequently, the defense filed an affidavit of prejudice against Judge CALLOW, and Judge ZASTROW was assigned to try the case. At the trial, which was before the court, the defense renewed its motion to suppress and Judge ZASTROW, after hearing testimony, again denied the motion. Although denied by defendant, the record amply supports the finding of the trial judge that the defendant requested to be taken to his motel room, and three detectives so testified.

Defendant, on appeal, argues that certain inconsistencies in the testimony of witnesses is such that their credibility must be seriously questioned with respect to the defendant giving consent for a search and cites *State v. Hoyt* (1963), 21 Wis. 2d 310, 317v, 124 N. W. 2d 47, wherein this court stated: "Under federal standards which now control the reasonableness of a search and seizure, consent to a search must be expressed in clear and unequivocal terms." However, the credibility of witnesses is a proper function for the trier of fact.

"The credibility of the witnesses is properly the function of the jury or the trier of fact, in this case the trial judge. It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the fact finder, who has the great advantage of being present at the trial." *Gauthier v. State* (1965), 28 Wis. 2d 412, 416, 137 N. W. 2d 101, certiorari denied, 383 U. S. 916, 86 Sup. Ct. 910, 15 L. Ed. 2d 671.

The state argues that there was no search in the constitutional sense in this case because (1) the defendant requested to be taken to his motel room, (2) the police in gathering up defendant's personal effects would have eventually come across the articles, and (3) the officers had no knowledge of the crime which had been committed at Papa Joe's and were not seeking evidence or contraband of a crime but packing the defendant's belongings at the request of the defendant.

A similar situation confronted the Montana Supreme Court in *State v. Braden* (Mont. 1969), 460 Pac. 2d 85, 88, wherein that court stated:

"The fact that the police officers found the additional incriminating evidence when packing up the appellant's personal possessions does not change the character of the evidence. They were packing his possessions at his request and under such a situation there is no unlawful search. Commenting on a similar fact situation in a recent federal case the Sixth Circuit said in the case of United States v. Blackburn, 389 F. 2d 93 (1968):

" 'The police employed their usual procedure when a person who was staying in a hotel or motel room was arrested. In sending for the belongings of the parties there was no intention of making a search for evidence or instruments of the crime. The conduct of the police department in sending for the personal effects of the parties, itemizing them and storing them for safekeeping was entirely reasonable and logical. We find that the action of the police officers does not constitute a search.

" ' "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." Haerr v. United States, 240 F. 2d 533, 535 (C. A. 5).' See also State v. Williams, Mont., 455 P. 2d 634; Heffley v. State (1967), 83 Nev. 100, 423 P. 2d 666; State v. Pederson, 102 Ariz. 60, 424 P. 2d 810."

And in *State v. Dombrowski* (1969), 44 Wis. 2d 486, 495, 171 N. W. 2d 349, this court defined search:

"This court, in *Edwards v. State*, [(1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397] said: ' "A search implies a prying into hidden places for that which is concealed." ' And, according to *Haerr v. United States*, [(5th Cir. 1957), 240 Fed. 2d 533, 535]

" ' "A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term [search] implies exploratory investigation or quest." ' "

We conclude that, under the facts of this case, the motions to suppress were properly denied.

### Chain of evidence.

Among the real evidence admitted at the defendant's trial were three objects: Exhibit 1, a toolmarked coin return container from a jukebox; Exhibit 4, the brown satchel found in the motel room; and Exhibit 5, a pry bar.

Mr. Cleon W. Mauer, a toolmark identification specialist from the state crime laboratory, testified and showed the chain of custody of the three items within

the crime laboratory. On August 23, 1967, Mr. Mauer, at the crime laboratory in Madison, received Exhibit 1 from Det. Sgt. Charles Bell of the Brookfield police department. He made an initial examination of it and, then, turned it over to Dr. Thomas Richard, the lab chemist. This was done so that Dr. Richard could examine the exhibit for trace materials.

Mr. Mauer received Exhibit 1 back from Dr. Richard by June Brown, his assistant. Mr. Mauer examined Exhibit 1 again and the toolmarks were in the same condition as they had been prior to the exhibit being turned over to Dr. Richard. Mr. Mauer then made his detailed examination and did his work in preparing his findings. The exhibit was in Mr. Mauer's custody until he placed it in the evidence room on October 27, 1967. It was in the evidence room until Mauer removed it and on April 16, 1968, returned it to Det. Sgt. Charles Bell.

State's Exhibit 6, the crime laboratory intradepartmental evidentiary control sheet on the items submitted in this case was received in evidence and it corroborated the testimony of Mr. Mauer.

The defense argued that the evidence could not be admitted at the trial because Dr. Richard was not present to testify about what he had done to them. The trial court, after determining that the toolmarks on Exhibit 1 had not been changed or affected by Dr. Richard's examination for trace materials, held that the exhibits were admissible.

Defendant again argues the chain of evidence was not properly established because Dr. Richard did not testify and also because Mr. Mauer, who was not a qualified chemist, "could not testify whether Dr. Richard's work has any bearing upon the item." However, defendant does not cite any cases in support of his argument.

The state, in its brief, cites *State v. Brady* (1965), 2 Ariz. App. 210, 407 Pac. 2d 399, in support of its assertion that the trial court properly found the evidence

admissible. In that case, the defense claimed that certain fingerprint cards should not have been admitted as evidence. The cards had been made from fingerprints lifted from the scene of the crime by one police officer and then given to another officer who mailed them to the FBI in Washington, D. C. The officer who lifted the prints testified, but the officer who mailed them did not. In holding that a proper foundation was laid for the admission of the fingerprint cards, the court stated:

"We find the exhibits were properly identified and adequate foundation laid for their admission in evidence. An exhibit is admissible, so far as identity is concerned, where it has been identified as being the same object about which the testimony was given and when it is stated to be in the same condition as at the time of the occurrence in question, and it is not necessary to negative the possibility of an opportunity for tampering with an exhibit nor to trace its custody by placing each custodian upon the witness stand. Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P. 2d 952 (1951) ; State v. Price, 76 Ariz. 385, 265 P. 2d 444 (1954)." *State v. Brady, supra,* p. 212.

In this case, there is uncontroverted testimony by Mr. Mauer that the condition of the exhibits had not been altered by the examination conducted by Dr. Richard. Nor is there any unexplained or missing link with respect to who had control of the exhibits. There is no question that the evidence was in substantially the same condition at the time of Mr. Mauer's examination as when they were taken from the defendant's motel room. 29 Am. Jur. 2d, *Evidence,* p. 844, sec. 774. No prejudicial error was committed in allowing the exhibits to be admitted as evidence.

*Interval between offense and arrest.*

Defendant argues the delay between the time in which incriminating evidence was found in the defendant's motel room (August 15, 1967), and issuance of a com-

plaint (February 19, 1968), denied his right to a speedy trial. The defendant objected to the delay in a pretrial motion in which the court found that the delay was not unreasonable or unexplained:

"The state came into possession of the gun allegedly owned by Papa Joe and located in his Cocktail Lounge on August 5 [sic], 1967 at the time the premises were burglarized, and also the pry bars, when defendant's room was searched on the evening of August 15, 1967 subsequent to the burglary. The district attorney advised the court the crime laboratory did not submit their report on the examination of the pry bars until October, 1967. The complaint was signed and the warrant issued on February 19, 1968. The district attorney cited the heavy workload in his office as one of the reasons for the delay in not formally charging the defendant, and further his indecision as to whether or not to charge the defendant at all since he was already back in prison on another charge. The court does not conclude the delay in charging the defendant was unreasonable and unexplained under the circumstances. Motion is denied."

Substantially the same contention was made in *State v. Midell* (1968), 40 Wis. 2d 516, 520–522, 162 N. W. 2d 54:

"The issue presented by the defendant raises a due process question, fifth amendment, and art. I, sec. 8, Wisconsin Constitution. The defendant urges that he was denied due process because of the delay of nearly one year from the date of the offense to the date of arrest.

". . . .

"In situations concerning a prearrest interval of time, the statute of limitations is usually considered the primary guarantee against bringing overly stale criminal charges. *United States v. Ewell* (1966), 383 U. S. 116, 122, 86 Sup. Ct. 773, 15 L. Ed. 2d 627, 632. However, a substantial majority of state and federal jurisdictions confronted with this issue have recognized that a statute of limitations is not the sole standard by which delay between offense and arrest is to be measured.

". . . .

"In post-arrest cases this court has determined that the mere lapse of time is insufficient to establish a denial of a speedy trial. *Commodore v. State* (1967), 33 Wis. 2d 373, 377, 147 N. W. 2d 283. Absent the tolling of the statute of limitations we see no reason to hold that lapse of time, standing alone, should be sufficient grounds to demonstrate a denial of due process in prewarrant situations."

On appeal, defendant's argument concerning prejudice is that Mrs. Lietz, the desk clerk at the motel where defendant had a room, could not identify any of the police officers present in court as the person who requested the key to the defendant's room. However, this testimony was not consequential, and we find no indication in the record that the delay in this case was in any way prejudicial to the defendant.

### Sufficiency of evidence.

On appeal, defense counsel, at the specific request of the defendant, raised the issue of sufficiency of evidence.

"We have said many times that when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. . . . This ultimate test is the same whether the trier of the facts is a court or a jury. . . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." *Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

A review of the record in this case reflects that the evidence is sufficiently strong to exclude any reasonable theory of innocence and meets the test of sufficiency to prove the defendant's guilt beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.