MOLINA, Plaintiff in error, V. STATE, Defendant in error. [Case No. State 51.]
LOPEZ, Plaintiff in error, V. STATE, Defendant in error. [Case No. State 108.]

*Nos. State 51, 108.  Argued November 5, 1971.—Decided February 3, 1972.*
(Also reported in 193 N. W. 2d 874.)

---

664

For the plaintiffs in error there were briefs by *David A. Saichek*, attorney, and *Gaines & Saichek* of counsel, all of Milwaukee, and oral argument by *David A. Saichek*.

For the defendant in error the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

ROBERT W. HANSEN, J. Can police officers pick up and use as evidence heroin powder that they have seen scattered on a public street from a speeding automobile by occupants fleeing police arrest? The commonsense answer would seem to be that they can. Not so, argue the defendants, for picking up the powder from the street constitutes a search and seizure incident to an arrest. As such, the validity of the search depends upon the legality of the arrest, and here, the argument continues, arrest was illegal because (1) the officers lacked probable cause for the arrest; and (2) if they had probable cause, they were required to procure an arrest warrant before placing the defendants in custody. Each link in that argumentative chain will be examined in its turn.

*A search? A seizure?*

When the police officers picked up the heroin powder scattered on a public street, was this a search at all? The trial court found that it was not. We agree. This court has defined a search as an examination of one's premises or person that ". . . implies exploratory investigation or quest," [1] and also, ". . . implies a prying into hidden places for that which is concealed." [2] To pick up what has been thrown away onto a public street or highway is not to conduct a search. The case before us goes beyond the "in plain view" situation where narcotics squad officers, standing at an opened door, observe a hypodermic needle and syringe lying on a bed. [3] There the question is whether the police conduct under the circumstances was ". . . on balance reasonable," [4] in effect, whether the police officers had the right to be where they were when they made the observation. [5] Where powders are sprinkled upon a public street, there can be no question of the right of the police officers to see what they saw. The scattered heroin was not only "in plain view." It was also in public view, where the pursuing officers, the patrolman on the beat or any passerby could observe it.

Not only was there no search here, also there was no seizure or taking. To seize means to take from. The term "seizure" implies a taking or removal of something

[1] *State v. McCarthy* (1970), 47 Wis. 2d 781, 786, 177 N. W. 2d 819, citing *Haerr v. United States* (5th Cir. 1957), 240 Fed. 2d 533, 535.

[2] *Id.* at page 786, citing *Edwards v. State* (1968), 38 Wis. 2d 332, 338, 156 N. W. 2d 397, and *State v. Dombrowski* (1969), 44 Wis. 2d 486, 495, 171 N. W. 2d 349.

[3] *See: Browne v. State* (1964), 24 Wis. 2d 491, 505, 506, 129 N. W. 2d 175, 131 N. W. 2d 169.

[4] *Id.* at page 509.

[5] *See: Id.* at pages 508, 509.

from the possession, actual or constructive, of another person or persons. Here we have the situation, observed by the officers, of the occupants of an automobile, traveling at high speed, emptying the contents of envelopes upon the road they were traveling. We do not have here an article lying on top of a davenport, or secreted under its pillows. We do not have here an article hidden behind a fence or billboard where some intent to return and repossess might be claimed. We have an affirmative act of divesting control, possession and ownership by emptying powdery contents and abandoning emptied envelopes onto a public street. Literally enough, it is a scattering to the four winds. Defendants in their brief claim that it is "purely fictional" to say that the evidence—the heroin—was abandoned. It is fact, not fiction, to conclude that, when the powders were sprinkled over the highway, abandonment of any claim to control, possession or ownership was complete, final and irrevocable. As the United States Supreme Court held in a case where a fleeing bootlegger tossed away a gallon jug and revenue officers picked up the broken bottle (with a quart of its contents), ". . . there was no seizure in the sense of the law when the officers examined the contents of each [jug, jar and bottle] after it had been abandoned. . . ." [6]

---

[6] *Hester v. United States* (1924), 265 U. S. 57, 58, 44 Sup. Ct. 445, 68 L. Ed. 898. *See also: State v. Doyle* (1968), 40 Wis. 2d 461, 466, 467, 162 N. W. 2d 60, where, as to police officer picking up a stolen watch box on the pavement following an automobile collision, the officer having stopped to determine if anyone had been injured, thereafter glancing into the auto involved and seeing a large amount of new jewelry on the backseat and thereupon arresting the driver of the car, this court asking: "Could anyone seriously contend that a reasonable and prudent policeman should not have immediately acted as Officer Gotelaere did in this instance?"

*Incident to arrest?*

A reasonable search and seizure pursuant to a lawful arrest is valid without a search warrant.[7] However, for a search incidental to arrest to be legal the arrest itself must be legal, and for the arrest to be legal probable cause for the arrest must exist.[8] In the case before us, there was neither a search nor a seizure. But, if we were dealing with a stopping of the automobile and a search of the automobile based on probable cause for believing it contained heroin, would this be a search incident to arrest and dependent upon the right to arrest? The United States Supreme Court has held to the contrary. Recently, the nation's highest court had before it the situation where the police, without a warrant, based on information supplied by a service station attendant, stopped an automobile, arrested its four occupants and searched the automobile, first at the scene of the stopping, later at the police station.[9] Upholding such searches, the United States Supreme Court rejected the contention that the searches of the automobile were an incident of arrest, holding:

"We pass quickly the claim that the search of the automobile was the fruit of an unlawful arrest. Both the courts below thought the arresting officers had probable cause to make the arrest. We agree. . . . the police had ample cause to stop a light blue compact station wagon carrying four men and to arrest its occupants . . . .

". . . the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

---

[7] *State v. Doyle, supra,* at page 466, citing *State v. Phillips* (1952), 262 Wis. 303, 55 N. W. 2d 384; *State v. Kroening* (1956), 274 Wis. 266, 79 N. W. 2d 810, 80 N. W. 2d 816.

[8] *Id.,* citing *State v. Camara* (1965), 28 Wis. 2d 365, 373, 137 N. W. 2d 1.

[9] *Chambers v. Maroney* (1970), 399 U. S. 42, 90 Sup. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U. S. 856, 91 Sup. Ct. 23, 27 L. Ed. 2d 94.

" 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are *dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.'* [*Carroll v. United States*] 267 U. S. at 158, 159." (Emphasis supplied.) [10]

So we conclude here that the officers' picking up the heroin strewn about the street (1) was not a search; (2) was not a seizure; and (3) was not dependent upon their right to arrest the defendants. However, since the appeal challenges the legality of arrest as well as the validity of the heroin pickup, the question remains as to whether the police officers were entitled to place the three occupants of the automobile under arrest.

*Probable cause?*

At the time the police officers placed the defendants under arrest, did they have probable cause or reasonable grounds to believe that the defendants probably had committed a crime? Probable cause exists if the facts and circumstances known to the police officer warrant a reasonable police officer in believing an offense has been committed.[11] Here such facts and circumstances known to the police officers included:

*The tip.* The police had received information from a police informer, who had previously furnished them reliable information, that the defendant Lopez ". . . went to Chicago for a load of heroin."

*Prior knowledge.* The police knew that defendant Lopez was a heroin user and dealer.[12]

---

[10] *Id.* at pages 46, 49.

[11] *Kluck v. State* (1967), 37 Wis. 2d 378, 389, 155 N. W. 2d 26, holding: ". . . Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime." Quoted with approval in *State v. Doyle, supra,* at page 466.

[12] A police officer testified that defendant Lopez was known by the police department to be a heroin user and dealer. *See:*

*Checkup.* The police had checked the two residences of defendant Lopez and determined that he was at neither of them.

*Verification.* The appearance of defendant Lopez at the time and place the informer had said he would appear, driving back to Milwaukee from Chicago, was corroboration of the information furnished by the informer.

*The chase.* The conduct of the defendant Lopez, when signaled to stop and pull over to the curb, in racing away at high speed created the basis for a reasonable inference that the getaway attempt was the response of a guilty person to the imminence of police arrest.

*The route.* Since a court is "bound to take notice of public facts and geographical positions," [13] the police here were entitled to give weight to the general awareness that the heroin traffic has been centered in large

*United States v. Harris* (1971), 403 U. S. 573, 582, 583, 91 Sup. Ct. 2075, 29 L. Ed. 2d 723, citing with approval *Brinegar v. United States* (1949), 338 U. S. 160, 69 Sup. Ct. 1302, 93 L. Ed. 1879, as a case ". . . in which the Court, in sustaining a finding of probable cause for a warrantless arrest, held proper the assertion of the searching officer that he had previously arrested the defendant for a similar offense and that the defendant had a reputation for hauling liquor. Such evidence would rarely be admissible at trial, but the Court took pains to emphasize the very different functions of criminal trials and preliminary determinations of probable cause. . . . [B]efore the trial we deal only with probabilities that 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' . . .

"We cannot conclude that a policeman's knowledge of a suspect's reputation . . . is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. . . ."

[13] *Carroll v. United States* (1925), 267 U. S. 132, 159, 160, 45 Sup. Ct. 280, 69 L. Ed. 543, citing *The Apollon,* 9 Wheat. 362, stating, " 'It has been very justly observed at the bar, that the Court is bound to take notice of public facts and geographical positions; . . .' "

metropolitan areas. Chicago is both the largest city in the midwest and a port of entry for plane and ship freight and passenger traffic. For a known addict to go to Chicago to purchase heroin is as likely as it was, in Prohibition days, for a known bootlegger to cross the Detroit River to pick up a consignment of illegal liquor.[14]

Where the issue is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime, we find here far more than is needed to establish the probable cause basis for arrest without warrant. In fact, each development—from tip to checkup to verification to chase to arrest—strengthened the probable cause basis for a warrantless arrest. As was said in another case, the events justifying arrest "rapidly gained cumulative force."[15] We do not hold that all or nearly all of the factors here present were required to establish probable cause; we do hold that probable cause for placing the defendants under arrest clearly existed at the time of the arrests.

[14] *Id.* at page 160; stating: "We know in this way that Grand Rapids is about 152 miles from Detroit and that Detroit and its neighborhood along the Detroit River, which is the International Boundary, is one of the most active centers for introducing illegally into this country spirituous liquors for distribution into the interior. . . . They [the defendants] were coming from the direction of the great source of supply for their stock to Grand Rapids where they plied their trade. That the officers when they saw the defendants believed that they were carrying liquor we can have no doubt, and we think it is equally clear that they had reasonable cause for thinking so. . . ."

[15] *Brinegar v. United States, supra,* at page 179, Mr. Justice BURTON, in concurring opinion: "In the present case, from the moment that the agents saw this petitioner driving his heavily laden car in Oklahoma, evidently en route to Missouri, the events justifying and calling for an interrogation of him rapidly gained cumulative force. Nothing occurred that even tended to lessen the reasonableness of the original basis for the suspicion of the agents that a crime within their particular line of duty was being committed in their presence. . . ."

*Warrant required?*

At this point, the defendants shift gears and reverse direction to contend that, if probable cause existed at the time and place of arrest, it existed earlier, and, at such earlier stage, the police were required to secure an arrest warrant. As their brief puts it: "Even if probable cause existed, the officers must first obtain an arrest warrant unless they demonstrate a 'grave emergency.' . . ." Principal reliance for this contention is placed upon a federal court case, involving search of a motel room and finding no probable cause to arrest.[16] There is neither search nor seizure in the case before us, but, if there were, what has been termed the "necessary difference" between searches of an automobile and a home or office or motel room cannot be ignored.[17] As to stopping and searching a moving automobile, given probable cause to believe it contains contraband or illegal contents, there is no constitutional requirement that an emergency or what are called "exigent circumstances" be present to warrant a warrantless arrest.[18] Whether

---

[16] *United States v. Hoffman* (D. C. W. D. Wis. 1966), 251 Fed. Supp. 569.

[17] *Carroll v. United States, supra,* at page 153, referring to ". . . a necessary difference between a search of a store, dwelling house or other structure . . . and a search of a ship, motor boat, wagon or automobile . . . ." (the case holding that under the fourth amendment, a valid search of a vehicle moving on a public highway may be had without a warrant, if probable cause for the search exists).

[18] *Coolidge v. New Hampshire* (1971), 403 U. S. 443, 524, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564, holding warrantless search of automobile at police station invalid where auto had been parked in driveway of defendant's home at time of arrest in his house. Mr. Justice WHITE (concurring and dissenting), summarizing the effect of the majority decision, stating at page 524: "The majority now approves warrantless searches of vehicles in motion when seized. On the other hand, warrantless, probable-cause searches of parked but movable vehicles in some situations would be valid only upon proof of exigent circumstances justifying the search.

the purpose of stopping the moving automobile is, as was the case here, to arrest its occupants or to search for contraband contents, there is "a constitutional difference between houses and cars." [19] As to the right to arrest and search the person, the cases involving searches of premises without warrant have no greater applicability. In fact, the exact procedure followed by the police in our case was, as to arrest without warrant, upheld by the United States Supreme Court.[20] Whether

. . ." Of the distinction made between moving and parked automobiles (in some situations), Mr. Justice WHITE comments at page 527: "For Fourth Amendment purposes, the difference between a moving and movable vehicle is tenuous at best." However, the majority opinion states at page 480: ". . . If the police may, without a warrant, seize and search an unoccupied vehicle parked on the owner's private property, not being used for any illegal purpose, then it is hard to see why they need a warrant to seize and search a suitcase, a trunk, a shopping bag, or any other portable container in a house, garage, or back yard."

[19] *Chambers v. Maroney, supra,* at page 52, holding: ". . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

". . . [F]or the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."

[20] *Draper v. United States* (1959), 358 U. S. 307, 79 Sup. Ct. 329, 3 L. Ed. 2d 327, a headnote summarizing: "An experienced federal narcotics agent was *told by an informer,* whose information the agent had *always* found to be accurate and *reliable, that petitioner,* whom the agent did not know but who was described by the informer, was peddling narcotics, *had gone to Chicago to obtain a supply,* and would *return on a certain train* on a *certain day* or the day after. The *agent met the train,* easily *recognized* petitioner from the informer's description, and, *without a warrant, arrested him,* searched him and seized narcotics and a hypodermic syringe found in his possession. These were later admitted in evidence over petitioner's objection at the trial at which he was convicted of violating a federal narcotics law. *Held:* The *arrest,* search and seizure were *lawful* and the articles seized were proper-

the defendants were on foot, on horseback, or, as they were, in a moving automobile, there was no constitutional requirement that the police procure an arrest warrant before proceeding with their investigation and verification of information furnished them, leading to the eventual arrest of the defendants, without warrant but based on probable cause that a crime had been committed.

*Right to verify?*

With no constitutional mandate involved, the challenge to the procedure here followed by the police relates to the reasonableness of the course taken. What is challenged is the right of the police to check or verify the accuracy of a telephoned tip from an informer. When the telephone rang in the police station, on the line was an informer who had previously provided reliable information on narcotics law violations. When the conversation ended, the police had been told that, at a certain time on a certain highway, a certain person would be driving an automobile containing heroin into this state and, subsequently, into the city where the police phoned had jurisdiction. When the telephone was hung up, the defendants would have the police go to a magistrate to seek an arrest warrant, based solely on the telephone conversation. Instead they set out to investigate the reliability of the information given them.

We agree that the warrant procedure is ". . . an important working part of our machinery of government. . . ." and not merely ". . . an inconvenience to be somehow 'weighed' against the claims of police efficiency. . . ." [21] But more than police efficiency is involved in the effort to check or validate the telephoned tip. Where no more is predicted than that a certain automobile will

ly admitted in evidence at petitioner's trial. . . ." (Portions italicized show parallel procedure preceding arrest without warrant to that used in case before us.)

[21] *Coolidge v. New Hampshire, supra,* at page 481.

pass a certain point on a certain highway at a more or less certain time, we view as prudent and in the public interest the election to check on whether the automobile had left the city and verify the fact of its return at the predicted time and place. More than reliability of the informer was involved; also involved was the accuracy of the information then furnished. Even if the tip and the reliability of the tipster on prior occasions justified the issuance of an arrest warrant, we see prudence in seeking corroboration or verification of the tip passed on. Under the facts here, the police had a right to verify the tip before seeking a warrant.

The police procedure here followed is identical to that taken by the police in a recent case before this court.[22] In that case, the tip to the police that the defendant would appear at a certain time and place with marijuana in his possession came from a citizen informer, rather than from a "traditional police informer."[23] In that case, this court found that the police, upon receiving the tip, could have procured a warrant for the defendant's arrest.[24] Instead of so doing, the officers set out to investigate and verify the information furnished. They went to the drugstore where the citizen informant clerked, and interviewed her to determine the basis of her tip. (In the case before us, the police checked by visiting the two residences of defendant to determine if he was at home.) In *Paszek*, the police then parked their squad car in front of the drugstore to keep it under surveillance. (In the case before us, the police sta-

---

[22] *State v. Paszek* (1971), 50 Wis. 2d 619, 184 N. W. 2d 836.

[23] *Id.* at page 631, this court stating: ". . . It would be unreasonable to demand the same showing of prior reliability in the case of such an informer [citizen informant] as in the case of a 'traditional police informer.' . . ."

[24] *Id.* at page 627, this court finding: ". . . On the basis of the information which impelled him to act, could Officer Danowski have procured a warrant for the defendant's arrest? We believe he could."

tioned their squad car alongside the expressway the informer had said defendant Lopez would be driving.) In *Paszek*, when the defendant appeared in the drugstore at the time the clerk had predicted he would, he was, without warrant, placed under arrest and searched. (In the case before us, when the defendant appeared at the time and place the informer had said he would, the police followed and, when he had crossed the city limits, sought to stop him at a stop sign to place him under arrest.) In *Paszek*, the police "verification of some of the details of the information reported" was termed a "safeguard," as indeed it was, but in that case "need-[ing] not [to] be to the same degree as required in evaluating the 'tips' of a police informer." [25] The appearance of the defendant in *Paszek* at the drugstore was held to be "sufficient corroboration" (page 632) to establish probable cause for the arrest without warrant. We hold here, as this court held in *Paszek*, that seeking such verification or "corroboration" was proper, prudent and indeed a to-be-preferred procedure.

On the right of police officers to seek verification of information furnished them by an informant, a decision of the United States Supreme Court,[26] recently cited with approval,[27] is to be noted. In that case, on the day

[25] *Id.* at pages 631, 632, this court holding: "The nature of Mrs. Darling's 'tip' falls within the scope of citizen informer. . . . Therefore, the element of prior reliability should not be adhered to. However, there must be some safeguard, and this can be satisfied by verification of some of the details of the information reported, but it need not be to the same degree as required in evaluating the 'tips' of a police informer."

[26] *Husty v. United States* (1931), 282 U. S. 694, 51 Sup. Ct. 240, 75 L. Ed. 629.

[27] *Coolidge v. New Hampshire, supra,* at pages 458, 459, the court stating: ". . . In two later cases, [*Husty v. United States, supra; Brinegar v. United States, supra*], each involving an occupied automobile stopped on the open highway and searched for contraband liquor, the Court followed and reaffirmed *Carroll*. . . ." after noting that *Carroll v. United States, supra,* holds that " 'contraband

of petitioner's arrest without warrant, the law officer had received information over the telephone that the defendant had two loads of illegal liquor in automobiles of a particular make and description. (The same person had given similar information before, found to be reliable.) The officer, acting on such tip, found one of the two cars, and when the defendant started it up, stopped the car and searched it, finding eighteen cases of whiskey. The high court found that no warrant was required,[28] that probable cause existed for search of the automobile,[29] stressing the "discovery of the automobile at the point indicated, in the control of Husty," [30] and rejecting the suggestion that the officers should have secured a warrant instead of setting out to verify the information telephoned them.[31]

---

goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant,' provided that 'the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.' . . ."

[28] *Husty v. United States, supra,* at page 700, the court stating: "The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search. . . ."

[29] *Id.* at pages 700, 701, the court stating: ". . . To show probable cause . . . [i]t is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched. . . ."

[30] *Id.* at page 701, the court stating: "Here the information, reasonably believed by the officer to be reliable, that Husty, known to him to have been engaged in the illegal traffic, possessed liquor in an automobile of particular description and location; *the subsequent discovery of the automobile at the point indicated, in the control of Husty; and the prompt attempt of his two companions to escape when hailed by the officers,* were reasonable grounds for his belief that liquor illegally possessed would be found in the car. . . ." (Emphasis supplied.)

[31] *Id.* at page 701, the court holding: ". . . The search was not unreasonable because, as petitioners argue, sufficient time elapsed

*Warrant securable?*

Our holding that the police conduct in seeking to verify information furnished them was both constitutionally permissible and "on balance reasonable" [32] may appear to sustain a police election between two alternative courses of procedure. In some cases that may be the situation, but here we have grave doubts that the officers, proceeding on the basis of the tip from the informer as here given them, could have obtained a warrant. Both state and defendants appear to agree that they could, disputing only whether they should have or were required so to do. But what was the exact nature of the tip given? It was that: "Jose Lopez went to Chicago for a load of heroin." It is true that the time of his return to this state and the route he would then travel was given. However, at the time of the telephone conversation, it appears evident that (1) Lopez was on his way to Chicago, probably not then in the state of Wisconsin; (2) that he went to pick up a load of heroin in Chicago, but very probably had not yet made the pickup or purchase; and (3) that the purchase was to be made and initial possession of heroin by the suspect was to take place in the state of Illinois.

Wisconsin statutes provide that an arrest warrant is to be issued "If it appears from the complaint, or from an affidavit or affidavits filed with the complaint or

---

between the receipt by the officer of the information and the search of the car to have enabled him to procure a search warrant. He could not know when Husty would come to the car or how soon it would be removed. In such circumstances we do not think the officers should be required to speculate upon the chances of successfully carrying out the search, after the delay and withdrawal from the scene of one or more officers which would have been necessary to procure a warrant. The search was, therefore, on probable cause, and not unreasonable; . . ."

[32] *Browne v. State, supra,* at page 507, holding ". . . police officers should be permitted to conduct a reasonable investigation when their suspicion has been reasonably aroused. . . ."

after an examination under oath of the complainant . . ." that ". . . there is probable cause to believe that an offense *has been* committed and that the accused *has* committed it . . . ." (Emphasis supplied.) [33] Where is the offense that has been committed against the law of Wisconsin, until the defendant crosses the state line with heroin in his possession? Where is the offense within the jurisdiction of these city police officers until he comes, with heroin in his possession, across the city limits? Where is the crime that has been committed at all until he makes the purchase of the heroin in Chicago? Could an arrest warrant be issued on no more probable cause than the belief that at some future time a named person would purchase illegal narcotics in another state and, thereafter, would probably return with his purchase to this state? Can an arrest warrant be issued before an offense has been committed and without a showing that the person to be named in the warrant *has* committed such offense? Since the point is not, on this appeal, raised, briefed or argued, we content ourselves with the holding that it appears probable that, if the police officers had sought an arrest warrant for defendant Lopez on the basis of the tip given them, the request for arrest warrant would have been denied for the reason there was no probable cause to believe that an offense had been committed against the laws of this state or that it had been committed by the person named by the police informant.[34] This would, of course, make the police procedure here followed—which we have found to be per-

---

[33] Sec. 968.04 (1), Stats.

[34] *See: State v. Runyon* (1926), 100 W. Va. 647, 648, 131 S. E. 466, stating: "The great weight of authority in this country supports the rule that, in the absence of statute, an indictment is fatally defective if it charges the commission of an offense *subsequent* to the date upon which the indictment is found. [cases cited]" *See also: Fowler v. Ross* (D. C. Cir. 1952), 196 Fed. 2d 25, 32, stating: "A crime cannot be charged *in futuro*."

missible, proper and prudent—perhaps the only course that could have been pursued.[35]

*Bindover proper?*

Probable cause must here be found not only when the police placed the defendants under arrest, but also when the presiding magistrate bound the defendants over for trial following the preliminary hearing. Defendants argue that probable cause did not exist for the bindover of the defendants for trial. A minority of this court agrees and states: "Probable cause was not proved at the preliminary examination, and the court was powerless to hold the defendants for trial."

The preliminary hearing in this case was conducted by Circuit Judge LEANDER J. FOLEY, acting as county judge. At the preliminary hearing, testimony by police officer David Lee, who participated in the arrest of the defendants, established the following facts:

*The tip:* ". . . at approximately 9:30 on the 10th of September, we received information from a reliable in-

---

[35] It is suggested in the minority opinion that, if a warrant for possession of narcotics could not be secured following the telephoned tip that defendant Lopez was going to Chicago to purchase heroin, an arrest warrant for Lopez and his wife could have been secured for violation of the conspiracy statute (sec. 939.31, Stats.). This would require claiming and eventually proving that Lopez and his wife had agreed and combined to commit a crime, with driving together to Chicago and back ". . . an act to effect its object. . . ." Conspiracy is often difficult to establish, particularly where it is a husband and wife who are alleged to be the parties to the conspiracy. Something more than the fact that the wife went along with her husband would be needed to establish either her advance knowledge of the purpose of the trip or conspiratorial participation in accomplishing a planned consequence of a joint undertaking. If the police had here sought and upon learning Lopez was going to Chicago secured an arrest warrant for Lopez and his wife on the basis of an alleged conspiracy, a more spirited, and perhaps more successful, attack upon the route they would have then taken seems entirely predictable.

former that Joe Lopez and his wife were going to Chicago to pick up a large quantity of heroin."

*Verification:* "At the Racine County Line on I-94. . . . [at] approximately 11:30. . . . we observed them coming back into the city . . . driving in a '62 Corvette convertible, Mr. Lopez's auto . . . three occupants . . . . We followed them back into the city."

*The chase:* "We followed them into the city, they got on the off ramp at 22nd and Clybourn at which time we attempted to pull them over and Mr. Lopez, who was driving the auto, when he spotted the,—observed the squad, he took off up 22nd Street at a high rate of speed."

*The throw away:* "While we were pursuing him, the other two occupants of the auto were punching holes in plastic bags of white powder and shaking them on the outside of the car to disperse the powder into the air."

*The arrest:* ". . . [T]he other squad stopped the auto. We stopped and picked up the evidence. . . . (*Q.* State whether or not you had administered any field tests to the white powder which you picked up.) *A.* I did. . . . (*Q.* And what was the result of your field tests?) *A.* They showed positive for heroin. . . . (*Q.* Did you arrest the defendant for possession of heroin or the three defendants?) *A.* I did."

*Laboratory tests:* "The heroin was taken to the vice squad, given two field tests, put in the police department inventory and in a lock tab envelope, sent registered mail to the Federal Bureau of Narcotics Laboratory in Chicago." (By stipulation the report of the federal bureau was received in evidence at the preliminary, stating that items three, four and five, personally picked up by Officer Lee, contained heroin hydrochloride.)

So the record here established an initial telephoned tip, believed by the police to be reliable, the verification of the tip by the Lopez automobile appearing on a certain route at a certain time, the getaway attempt when the police sought to curb the defendants' car at 22nd and Clybourn, the emptying of the white powder on the public street by the occupants of the automobile, the field

test on the spot and subsequent laboratory tests establishing the substance thrown out of the car to be heroin.[36] Judge FOLEY, acting as magistrate, found that ". . . there is probable cause that a felony has been committed, to wit, possession of a narcotic contrary to Section 161.02 (1) of the Wisconsin Statutes and further that there is probable cause to believe that the defendant may be guilty and that the defendants and each of them may be guilty," and that ". . . the court must so find there is probable cause and commit these parties to await

---

[36] At the time of preliminary hearing, this entire sequence of events preceding the arrest was before the magistrate. Cases evaluating the showing of probable cause necessary to support issuance of a search warrant involve a more limited inquiry into the basis for issuing a warrant. *See: United States v. Harris* (1971), 403 U. S. 573, 91 Sup. Ct. 2075, 29 L. Ed. 2d 723, stating affidavits in support of issuance of a search warrant are to be " '. . . tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . .' " (page 577) *Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723, is cited in *Harris* as requiring ". . . nothing more than an affidavit reciting: 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana . . . are being kept at the above described premises for the purpose of sale and use . . . .' " (pages 577, 578) The United States Supreme Court in *Harris* found the *Aguilar* affidavit, held sufficient to establish probable cause, "contained none of the underlying 'facts or circumstances' " (page 578) and ". . . was a 'mere affirmation of suspicion and belief.' . . ." (page 578) In determining whether a warrant is to issue, " 'Corroboration through other sources of information . . .' " is proper and admissible (page 581, citing *Jones v. United States* (1960), 362 U. S. 257, 80 Sup. Ct. 725, 4 L. Ed. 2d 697. The United States Supreme Court, in *Harris*, emphasizes ". . . the very different functions of criminal trials and preliminary determinations of probable cause. . . . [B]efore the trial we deal only with probabilities that 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' . . ." (pages 582, 583) The quote applies to the conduct of preliminary hearings as well as to applications for warrants. Both are pretrial "preliminary" determinations of probable cause.

trial. . . ." On this record, we concur that probable cause was clearly established that a crime had been committed and had in fact been committed by these defendants. As to all issues raised, the challenges fail and affirmance is required.

*By the Court.*—Judgment and order affirmed.

HEFFERNAN, J. (*dissenting*). The majority opinion fails to consider the facts of record and completely overlooks the posture of the case on this appeal. The majority opinion is apparently based upon the hypothesis, and it is only that, that the facts now considered by this court on appeal were before the magistrate at the time of the preliminary examination and probable cause was found on the basis of the evidence adduced at that hearing. The facts of record are clearly to the contrary. None of the facts which the majority relies upon to show probable cause for the police conduct and the subsequent bindover were before the magistrate at the preliminary examination. The question is not whether the verdict was sustainable on the basis of the evidence adduced at trial or that such evidence showed probable cause. The question posed by the record is whether probable cause for the arrest was shown at the preliminary examination and whether there was probable cause to bind the defendants over for trial. The majority opinion apparently proceeds on the unwarranted assumption that it is sufficient to show at trial probable cause that *could* have been shown at the preliminary examination but was not. The record is clear that the state did not attempt to prove probable cause at the preliminary examination. At that proceeding the state's witnesses merely asserted that an unnamed informant was "reliable," but no evidence was put in to show the basis for such conclusional testimony. Such information was not even offered until the time of trial.

There was no testimony whatsoever at the preliminary to show from what facts or from what circumstances the informant concluded that his information was reliable. Such evidence was never submitted—even at trial.

Defense counsel attempted to elicit such proof from the state's witnesses, but the prosecutor's objections kept out the very information which might have tended to prove probable cause. It is apparent that the magistrate erroneously thought that the *Spinelli* test, *Spinelli v. United States* (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637, was not controlling in a Wisconsin case. *Spinelli* teaches that there is a dual test that must be met if a court is to conclude that an informant's tip is sufficient to show probable cause that an offense has been committed. *See State ex rel. Furlong v. Waukesha County Court* (1970), 47 Wis. 2d 515, 177 N. W. 2d 333. There must be evidence that the person giving the information was of proved reliability *and* there must be a showing of the underlying circumstances revealing how the informer received his information, so that the reliability of the informant's tip can be appraised. Because of the state's objections and its refusal to put in affirmative testimony, probable cause for the police conduct—that is, the attempted arrest at the stop sign—was not shown. All that was shown was that the defendants, during the course of an attempted arrest, threw a substance on the street that was later shown to be heroin.

The facts shown at the preliminary, without a showing of probable cause for the police conduct, did no more than to prove an attempted illegal arrest. That being the case, the evidence obtained thereby was excludable as the "fruit of the poisonous tree." *Wong Sun v. United States* (1963), 371 U. S. 471, 83 Sup. Ct. 407, 9 L. Ed. 2d 441.

Probable cause must be shown at the preliminary before a defendant is bound over for trial. An illegal ar-

rest or search cannot be bootstrapped into a legal act merely because *post hoc* it proves to have been correct, in the sense that a culpable party was arrested, or that evidence was made apparent that revealed guilt. The legality of the arrest or search or the discovery of contraband by other than illegal means is the condition precedent that must be satisfied if the evidence is to be admissible.

It is clear and apparently conceded by the state that probable cause was not proved at the preliminary. There was no evidence at the preliminary to show the reliability of the informer or of his information, as required by *Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723, and *Spinelli, supra.*

The majority opinion completely disregards the failure of proof at the preliminary and the fact that defendants made appropriate motions that should have resulted in a dismissal at that stage.

At trial defendants sought to exclude evidence tending to show probable cause for the arrest on the ground that they had tried to elicit it at the preliminary examination, but erroneously had been prohibited by the magistrate from posing the necessary questions. The trial judge refused even to consider these objections to evidence on the ground that it would be inappropriate for him, a county judge, to overrule a circuit judge who had been acting as magistrate at the preliminary.

Even at trial the reliability of the information was supported not by the fact that there was a showing that the informer had the opportunity to secure reliable information, but rather that his information happened to prove to be correct.

The majority opinion persuasively argues that the police had probable cause for their conduct that led up to the arrest. This position is perhaps arguably correct. The argument is flawed, however, for it considers evidence that came in for the first time at trial. It is the

theme of the majority that the police acted reasonably and had probable cause to attempt an arrest, and that it is therefore irrelevant that the prosecutor failed to show probable cause at the preliminary examination. On the contrary, sufficient proof at this point was the *sine qua non* of holding the defendants for trial. Probable cause was not proved at the preliminary examination, and the court was powerless to hold the defendants for trial.

Under the state of the facts shown at the preliminary examination, the magistrate had the clear duty, as provided in sec. 954.12, Stats. 1967, to order the "defendant discharged forthwith." Defendants were denied their constitutional right to be tried upon indictment or information based upon a finding of probable cause. They were held for trial almost six months on a fatally deficient preliminary.

The effect of the majority's ruling is to convert the preliminary examination into a nullity. Henceforth, it is apparently sufficient to bind a defendant over for trial without indictment and without probable cause being proved. Under the majority's thinking probable cause can now be proved for the first time at trial.

It should not be the function of this court to countenance criminal convictions when, as in this case, procedural due process has not been observed.

While justice in the instant case was probably done— at least in the sense that the evidence at trial is overwhelming in its proof of the defendants' guilt—the majority's opinion really stands for the proposition that a citizen may be arrested where no probable cause is shown prior to the actual trial. This smacks of the philosophy that all citizens are fair game for police invasions of their privacy. If, after trial, guilt is proved, the violations of personal liberty are to be excused on the grounds that the guilty have been punished. If guilt

is not revealed by an illegal arrest and search, the invasion of an innocent party's rights is excused as being necessary to ferret out criminal conduct. The facts of this case show that such shortcut procedures are unnecessary and destructive of fundamental principles of due process. Here, the facts eventually revealed at trial arguably, though minimally, would perhaps have been sufficient to show probable cause at the preliminary and could have been produced then. By countenancing this sloppy prosecutorial (not police) procedure, all citizens —the innocent as well as the guilty—may be placed on trial without probable cause being shown to justify an arrest or the seizure of evidence. A "hard" case involving criminals who no doubt should be convicted should not result in bad law that may be used to invade the rights of the innocent.

The instant case is simply one that should not have gone to trial. The complaint should have been dismissed following the preliminary. If, after such dismissal, the state felt it had sufficient evidence to show probable cause for a bindover for trial, it could have commenced another preliminary examination, as provided by sec. 955.20, Stats. 1967, and then proceed with its proof of probable cause if such proof were then available.[1]

---

[1] Since, as the writer perceives the undisputed facts of this case, it is the validity of the bindover for trial that is the only issue, it is unnecessary to discuss the doubtful rationale of the majority opinion. Suffice it to say, the judge who reviewed the preliminary hearing made the finding of fact *that a warrant could have been secured and there were no exigent circumstances.*

The majority would counter this by asserting that no crime had been committed until defendants were in illegal possession of the heroin in Milwaukee county and, therefore, no warrant was securable. Basic and elementary criminal law is to the contrary. Sec. 939.31, Stats., provides that, "Whoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties . . . does an act to effect its object . . . ," be charged with a con-

Inasmuch as the defendants were tried without proof of probable cause and without proof properly elicited at the preliminary examination to show that there was probable cause for the attempted arrest, the judgments of conviction should be set aside, with the state having the election to proceed with a second preliminary examination.

I am authorized to state that Mr. Justice WILKIE joins in this dissent.

spiracy and may be subject to penalties that do not exceed the maximum provided for the completed crime.

The information received from the informer clearly stated that Lopez and his wife were going to Chicago to pick up heroin and return it to Milwaukee. This information, if reliably obtained, as asserted by the majority, spells out the basis for a conspiracy warrant.

It is no service to law enforcement to make the fantastic assertion that inchoate or uncompleted crimes cannot be charged. The state, unlike the majority of this court, at no time asserted that no warrant was obtainable. It merely argues that it was unnecessary.