State of Wisconsin, Plaintiff-Respondent,

v.

Pedro L. Nieves, Defendant-Appellant.†

Court of Appeals

*No. 2006AP1308–CR. Submitted on briefs April 26, 2007.
—Decided June 6, 2007.*

2007 WI App 189

(Also reported in 738 N.W.2d 125.)

† Petition for review denied 9/13/07.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Ralph J. Sczygelski*, of *Sczygelski Law Firm, LLC.*, of Manitowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Katherine Lloyd Tripp*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J.   After the trial court denied his motion to suppress, Pedro L. Nieves pleaded no contest to possession with intent to deliver more than forty grams of cocaine within 1000 feet of a park or

school. The cocaine was seized in a vehicle search after Nieves, an unseatbelted passenger in the car, falsely identified himself to the police officer. The issue on appeal is whether the officer had probable cause to arrest Nieves for obstructing an officer, thus opening the door for the search that followed. We conclude that under the totality of the circumstances probable cause existed and affirm.

¶ 2. The undisputed facts are as follows. On September 11, 2004, city of Sheboygan police officer James Olsen was on patrol in connection with his Street Crimes Unit assignment. He observed a Chevrolet Suburban parked in the driveway of 1522A Blocki Court with its lights off and its motor running. A license plate check revealed that the plates were issued to a 1996 Dodge Intrepid listed to Herman Batteast, a known drug dealer. Olsen knew that his unit had picked up Batteast just a week earlier for delivery of cocaine charges and five months ago Olsen personally had arrested Batteast on an outstanding charge from the Drug Unit. Olsen thought it suspicious that the parked car was not the vehicle to which the plates were issued and was running with its lights off at 8:45 p.m.

¶ 3. Shortly thereafter, Olsen observed a white Ford Taurus turn onto Blocki Court. The Taurus was registered to Maria Ramirez. About one minute later, the Batteast vehicle pulled up alongside the Taurus and Olsen saw someone walk from the Taurus to the Suburban. When the Batteast vehicle made as if to park, Olsen moved to another nearby location, stopped, turned off the squad's lights and observed for about two minutes. As the Taurus drove by, Olsen saw that it had a temporary license plate and very dark-tinted windows which prevented him from seeing the occupants. Olsen knew that parties dealing drugs at 1522A Blocki Court

185

had used false temporary tags in the past. He thought the darkened windows might be in violation of state regulations prohibiting side-window tinting that does not allow at least fifty percent light transmission. *See* WIS. ADMIN. CODE § TRANS 305.32(4)(b)2. (May 2004).

¶ 4. Olsen stopped the Taurus and informed the two occupants that the reason for the stop was the dark window tint. He recognized the driver as Brandon Green, a suspected drug dealer familiar to Olsen as an associate of Batteast. As Green grabbed a backpack to access some form of identification, Olsen saw several bills of currency in the backpack.

¶ 5. The passenger, later identified as Nieves, told Olsen that he had no identification but said he was Anthony Otero from Chicago. A backpack sat on the floor between his feet. Neither Green nor the man claiming to be Otero wore seatbelts. Olsen ran computer checks on both men for warrants. The name "Anthony Otero" did not come back on file. Olsen told "Otero" that because he could not positively identify him, Olsen would be taking him into custody per department procedure. The reason for that policy is to avoid issuing a citation in the wrong name, possibly resulting in an innocent person having his or her license suspended for failing to pay a fine.

¶ 6. Olsen issued both men citations for failure to wear seatbelts, and handcuffed Nieves and placed him in the back of the patrol car. Olsen testified that, in his experience, people who know they have outstanding warrants often give false names to police officers. Olsen then searched the vehicle. Neither Green, Nieves, nor the registered owner of the Taurus gave Olsen permission to search it. The backpack that had been at Nieves' feet yielded a quarter kilo of cocaine, a digital scale and over one thousand dollars in cash. With Nieves already

186

in custody in the back of the squad car, Olsen then arrested Green for suspected party to the crime of possessing cocaine with intent to deliver. Nieves then admitted to Olsen that his real name was Pedro Nieves.

¶ 7. Detective Jeffrey Metke fingerprinted and photographed Nieves at the police station before Nieves received his *Miranda*[1] warning. Between the two procedures, Nieves told Metke that everything in the car was his and Green had nothing to do with it and should be let go. Metke told Nieves to stop talking, but Nieves repeated the statement. Metke then photographed and Mirandized him, and Nieves signed a waiver of his rights.

¶ 8. Nieves was charged with possession with intent to deliver more than forty grams of cocaine within 1000 feet of a park or school in violation of Wis. Stat. §§ 961.41(1m)(cm)4. (2005–06) and 961.49(2)(a) (2003–04).[2] He moved to suppress the fruits of the search: the cocaine and the incriminating statements. The trial court found no *Miranda* violation, but instructed the parties to file supplementary briefs regarding the legality of the arrest. The court later rendered an oral decision holding that Nieves' false identification authorized Olsen to arrest him which then entitled Olsen to search the vehicle. The court denied the motion to suppress in its entirety. Nieves pleaded no contest and now appeals.

## DISCUSSION

¶ 9. For purposes of this appeal, the propriety of the initial traffic stop is not challenged. Rather, Nieves

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

argues that he should not have been arrested for his "innocuous seatbelt violation." He was not. Indeed, Wis. Stat. § 347.48(2m)(gm) expressly forbids an arrest based solely on a seatbelt violation. The sole issue, therefore, is whether there existed probable cause to arrest Nieves for obstructing an officer, thus legitimizing the ensuing search.

¶ 10.   Whether police conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact. *State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998). We decide constitutional questions de novo, benefiting from the analysis of the trial court, and will uphold findings of evidentiary or historical fact unless they are clearly erroneous. *Id.* Since Nieves does not contend the trial court's factual findings were erroneous, our review entails independently applying the facts to the constitutional standard. *See State v. Malone*, 2004 WI 108, ¶ 14, 274 Wis. 2d 540, 683 N.W.2d 1.

¶ 11.   Every lawful warrantless arrest must be supported by probable cause. *Molina v. State*, 53 Wis. 2d 662, 670, 193 N.W.2d 874 (1972). Probable cause to arrest is the sum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime. *State v. Secrist*, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). An arrest is legal when the officer making the arrest has reasonable grounds to believe that the person has committed or is committing a crime. *See* Wis. Stat. § 968.07(1)(d).

188

¶ 12.   Obstructing an officer is a crime. WIS. STAT. § 946.41(1). Obstructing an officer "includes . . . knowingly giving false information to the officer." Sec. 946.41(2)(a). Knowingly providing false information with intent to mislead is obstruction as a matter of law. *State v. Caldwell*, 154 Wis. 2d 683, 688, 454 N.W.2d 13 (Ct. App. 1990).

¶ 13.   We conclude that probable cause to arrest for obstruction existed. An accumulation of factors contributed to Olsen's suspicion that "Anthony Otero" was a false name which, in turn, led to the search. Olsen had been maintaining surveillance on a known drug house and a vehicle bearing plates registered to a known drug dealer's vehicle. The vehicle, a different make than the one to which the plates were issued, already had aroused his suspicions when, upon following it, Olsen observed some interchange between Batteast's car and the Taurus occupied by Green and Nieves. The Taurus' dark window tint prompted Olsen to stop that vehicle. Green, a known associate of Batteast, and the Taurus' temporary license plates further raised Olsen's suspicions. Adding those facts to the inability to verify Nieves' identity and Olsen's knowledge that people sometimes give false names when they have outstanding arrests, a reasonable police officer would have believed that Nieves was guilty of obstruction.

¶ 14.   Granted, there may have been an innocent explanation as to why the name "Anthony Otero" yielded no results when Olsen ran it through the database. However, an officer is not required to draw a reasonable inference that favors innocence when there

189

also is a reasonable inference that favors probable cause. *See State ex rel. McCaffrey v. Shanks*, 124 Wis. 2d 216, 236, 369 N.W.2d 743 (Ct. App. 1985). Probable cause is a flexible, commonsense standard. *State v. Tompkins*, 144 Wis. 2d 116, 124, 423 N.W.2d 823 (1988). It requires only that the facts available to the officer would warrant a person of reasonable caution to believe that an offense likely was committed. *See id.* The process deals with probabilities, not hard certainties. *Id.* Law enforcement officers are permitted to formulate certain commonsense conclusions about human behavior and to consider the evidence as understood by those versed in the field of law enforcement. *Id.* at 124–25.

¶ 15. We disagree with Nieves that *Knowles v. Iowa*, 525 U.S. 113 (1998), bolsters his position. There, a police officer stopped Knowles for speeding and issued him a citation rather than arresting him, an option a state statute permitted the officer. *Id.* at 114, 115 and n.1. Also in line with Iowa law, the officer conducted a full search of Knowles' vehicle after issuing the citation and discovered a bag of marijuana and a pot pipe. *Id.* Knowles moved unsuccessfully to suppress the evidence on grounds that the search was not incident to an arrest. *Id.* The Supreme Court held that the search violated the Fourth Amendment because in a simple traffic stop (1) there likely is less threat to an officer's safety and (2) the need to discover and preserve evidence does not exist. *Id.* at 117–18. Nieves argues that *Knowles* provided that a search of a vehicle incident to an arrest is improper if the officer's only goal is to issue a citation. We think he means "a search incident to a citation," because that is what the Court addressed in *Knowles*. *Id.* at 115.

¶ 16. Nonetheless, we disagree that *Knowles* fully applies here because in *Knowles*, nothing prompted the vehicle search except Knowles' speeding citation. *Id.* at 114. Here, by contrast, it was not the citation but the accumulation of facts which heightened Olsen's attention. Moreover, the *Knowles* Court specifically stated that dissatisfaction with the identification provided "may be a basis for arresting [the person] rather than merely issuing a citation." *Id.* at 118.

¶ 17. We affirm the judgment.[3]

*By the Court.*—Judgment affirmed.

¶ 18. BROWN, J. (*dissenting*). To me, the issue is whether the arresting officer had "probable cause" to arrest for obstructing or whether the officer had merely a "reasonable suspicion" that Nieves was obstructing. The difference between the two is significant in that, with probable cause, the officer's search of the automobile was justified, but with a *Terry*[1] stop, it would not have been.

¶ 19. What troubles me, in particular, is the quantum of evidence provided by the State to justify probable cause that Nieves obstructed the officer. This is the evidence: (1) in the evening hours, the officer saw a Taurus next to a Suburban that had been connected with drug activity; (2) the officer observed some interchange between the occupants of the Taurus and the Suburban; (3) the Taurus had temporary license plates,

---

[3] Nieves apparently has abandoned the alleged *Miranda* violation he raised below. He states early in his brief that the trial court should have granted the motion to suppress "all statements made," but fails to develop the argument. Issues not briefed or argued are deemed abandoned. *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

which raised the officer's suspicion because he knew that the parties associated with drug dealing in the area had used temporary plates in the past; (4) the Taurus appeared to have excessive window tint; (5) Green, the driver of the Taurus in which Nieves was a passenger, was a known associate of the Suburban's owner and was himself a suspected drug dealer; (6) when Green grabbed his backpack from the backseat, the officer noticed several bills of currency in the backpack; (7) Nieves said he was from Chicago and gave his name as "Anthony Otero." The officer could not verify this by a database search; and (8) the officer believed that persons suspected of drug activity often give false names if there are outstanding warrants.

¶ 20.    When Nieves gave the name "Anthony Otero" and it did not turn up in the database, the officer no doubt had a good hunch that Nieves had not given his true name because he had a guilty mind based on the situation at hand. On the above-stated facts, the officer had a " 'particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citation omitted). The officer therefore would have been justified in "freezing" the situation and putting Nieves in his squad, handcuffed, until he could find out more.

¶ 21.    But did the officer have probable cause to *arrest* at this point? In *Alabama v. White*, 496 U.S. 325, 330 (1990), Justice White explained the differences in the "reasonable suspicion" and "probable cause" standards:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to

establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

¶ 22. Thus, it is the content of information possessed by police and *the degree of reliability* which demarcate the difference between the two standards. Let us sample the "reliability" aspects of the two relevant facts which led to the obstructing charge.

¶ 23. First, the officer had facts from which he could readily form a good guess that drug activity was afoot. These facts certainly strengthen the false identity suspicion, though only marginally. A person suspected of being involved in drug activity might have outstanding warrants and therefore that person might have an incentive to give a false name. But the key word here is "might." That a person involved with drug suspects might have warrants outstanding and might therefore lie about his or her identity is a nice hunch, but it is not a fact—at least not a reliable fact.

¶ 24. Second, the name "Anthony Otero" did not come up in the database. That would no doubt raise suspicion. But does this mean that Nieves was probably lying about his identity? I take my cue from *Erickson v. State*, 141 P.3d 356 (Alaska Ct. App. 2006), *rehearing granted,* 141 P.3d 355 (Alaska Ct. App. 2006). The Alaska court, faced with similar facts, observed that it had no knowledge about how accurate and usable the database at issue was. *Id.* at 359. The court surmised that even though the State alleged that the database contained all the licensed drivers and people who had contact with police in Alaska, it would still exclude a huge number of people whom a policeman might encounter. *Id.* The court concluded that an officer does not

have probable cause to arrest for obstructing simply because a name is not in some database. *Id.* at 359–60.

¶ 25. Looking at the record here, there are even greater gaps in knowledge about the database in this case. The only description in the record is the statement in the complaint that Otero "did not come back on file in Wisconsin or Illinois." We do not know what the database contained—whether it was limited to licensed drivers, everybody who had come into contact with law enforcement or something different. We do not know how accurate or flexible the database was; for example, whether a typo or use of a nickname would result in a person's failure to come up on file. We only know that an Anthony Otero, from Chicago, was not in the database.[2] In my view, the fact that Anthony Otero was not in the database did not result in a "fair probability" that Nieves obstructed. No doubt, there was suspicion, but the United States Supreme Court has said that probable cause must be based on more than mere suspicion. *Henry v. United States*, 361 U.S. 98, 104 (1959). And citing to the United States Supreme Court again, the "process does not deal with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 418 (1981). It is my opinion that a man or woman who is at a possible drug scene who gives a name that does not show up on a database does not satisfy the law of probabilities that he or she has given a false name. Suspicion, yes, probabilities, no.

¶ 26. The State suggests that, had there been no arrest, the only other option was to let Nieves go

---

[2] Interestingly, the record suggests that there is, in reality, an Anthony Otero who is the brother of the defendant. If such is the case and, if Anthony Otero were the one in the passenger seat instead of Nieves, could Otero have been arrested simply because his name was not in the database?

without verifying his identification. That is wrong. The officer, as I indicated at the outset, could have held Nieves on a *Terry* stop until the identity problem had been resolved. Once resolved, Nieves could have been placed under arrest for obstructing. Until then, the officer had no right to search Green's car incident to arrest.

¶ 27. I fully realize that, while courts often opine that "reasonable suspicion" is a less demanding standard than "probable cause," there is no clear sense and no offered guidance as how to differentiate between the two in a mathematically finite way. The difference between the two standards seems to move along a spectrum that defies fixed points. I am convinced that this inability to clearly define "probability" with any certainty is what gives succor to the majority's view that the facts in this case allowed the "inference" of obstructing. But I am not so satisfied. I dispute the relationship of the premises (Nieves was at a possible drug scene and his name was not in the database) to the conclusion drawn by the officer (Nieves was probably lying about his identity).

¶ 28. If we are to allow officers to arrest persons who are suspected of being at a drug-related scene simply because a name given to the officer is not in a database, officers can use that database failure to search a car, search a person, search a home, all without a warrant. It is my view that the inferences an officer draws from the facts must be of reliable vitality before privacy interests entirely give way. If the facts are less reliable, the government's interest in stopping illegal drug activity must be measured against existing privacy interests. Here, the governmental interest in ferreting out the true information as to Nieves' identity could have been accomplished without intruding into the

195

private realm of Green's automobile. It is unreasonable to entrust freedom from unreasonable search and seizure to an unknown computer database. I respectfully dissent.