**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 21, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP927-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2018CT21**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL THOMAS MARTELL,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Vilas County: NEAL A. NIELSEN III, Judge. *Affirmed*.

¶1    SEIDL, J.[1]  Michael Martell appeals a judgment, entered upon his no-contest plea, convicting him of second-offense operating a motor vehicle while intoxicated (OWI).  Martell argues the circuit court erred by denying his motion to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

suppress evidence obtained during his traffic stop, contending the law enforcement officer lacked reasonable suspicion to stop his vehicle. We conclude the officer had reasonable suspicion to stop Martell's vehicle and, therefore, affirm.

## BACKGROUND

¶2 At a hearing on Martell's motion to suppress evidence, Vilas County Sheriff's Department lieutenant Jeffrey Schaub testified as follows. On February 14, 2018, at approximately 7:30 a.m., dispatch notified Schaub that it had received a civilian complaint of a vehicle driving erratically while southbound on U.S. Highway 51, north of Wisconsin Highway 70. The tipster stated that the vehicle was a black sport utility vehicle ("SUV") with either a Michigan or Minnesota license plate including the letters "GLY." Schaub proceeded to an area south of Highway 70 to wait for the vehicle. The road conditions were wet, and snow was on the ground but not on the roadway. Schaub eventually observed a vehicle closely matching the description he was provided; the vehicle was a black SUV with a Michigan license plate bearing the letters "GLI." Schaub began following the SUV.

¶3 Schaub observed the SUV apply its "brakes hard and kind of dr[i]ve off the side of the road" before swerving or "jerk[ing]" back into its lane of travel and accelerating again. These actions caused the vehicle behind the SUV to "slam" on its brakes as well. Schaub also observed the SUV's passenger side tires drive off of the paved roadway onto the gravel shoulder on three occasions.

¶4 Schaub continued following and watched the SUV weaving within its own lane of travel. At the same time, the SUV's speed was fluctuating. Schaub estimated that he and the SUV were traveling approximately twenty-five miles per hour in a forty-five mile-per-hour zone. Schaub then stopped the SUV.

2

Schaub testified that he stopped the SUV because he had "concerns regarding the SUV driver's ability to safely operate [the] vehicle based on what [Schaub] saw and what [he was] told by dispatch[.]"

¶5     Martell was identified as the SUV's driver, and he was subsequently arrested and charged with OWI and operating a motor vehicle with a prohibited alcohol concentration, both as second offenses. Martell moved to dismiss his case and suppress evidence obtained during and after the traffic stop, contending he was stopped without Schaub having reasonable suspicion that Martell was engaged in unlawful behavior.

¶6     Martell testified at the suppression hearing that he had missed a turn and was looking for a place to turn around. Martell further testified that snow banks on the road "were fairly high," making it hard for him to find a place to turn around without using someone's private driveway. He did not remember having driven onto the gravel shoulder at any time prior to the traffic stop.

¶7     The circuit court denied Martell's motion, concluding that Schaub had reasonable suspicion to stop Martell based on the totality of the circumstances. The court found that there was a "very strong indication" the tipster made "reasonable observations" because "the person [was] willing to identify [herself] and [could] provide further identifying information regarding the vehicle, including the fact that it's a Michigan or Minnesota plate and [could] give partial plate ID." The court observed that there may have been innocent explanations for Martell's behavior, but Schaub was not required to draw an inference that favored Martell's innocence. Thus, based on the totality of Schaub's observations, with Martell's deviation onto the gravel shoulder being the "most important[]," the court determined Schaub "was justified in making the stop."

¶8    Upon Martell's no-contest plea, the circuit court found him guilty of second-offense OWI.  Martell now appeals.[2]

## DISCUSSION

¶9    A traffic stop constitutes a seizure under the Fourth Amendment to the United States Constitution.  *See State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634.    However, a traffic stop does not violate the Fourth Amendment's prohibition against unreasonable searches and seizures when a law enforcement officer has reasonable suspicion to believe a crime or traffic violation has been or will be committed by the vehicle's occupants.  *See State v. Houghton*, 2015 WI 79, ¶21, 364 Wis. 2d 234, 868 N.W.2d 143.  This standard requires that the stop be based on more than an officer's "inchoate and unparticularized suspicion or hunch."  *Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).    Rather, an officer's reasonable suspicion must be supported by articulable facts indicating that wrongful activity may be afoot.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime."  *Post*, 301 Wis. 2d 1, ¶13.

¶10    Determining whether an officer had reasonable suspicion for a traffic stop is a common sense test that turns on the totality of the facts and circumstances.  *Id.*  In assessing the totality of the circumstances in this context,

---

[2] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's no-contest plea.  *See* WIS. STAT. § 971.31(10).

"there need not be a violation of the law to give rise to reasonable suspicion." *State v. Anagnos*, 2012 WI 64, ¶56, 341 Wis. 2d 576, 815 N.W.2d 675. Moreover, an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that wrongful activity might be afoot. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125.

¶11 Whether there was reasonable suspicion to conduct a traffic stop is a question of constitutional fact, which is a mixed question of law and fact to which we apply a two-step standard of review. *Anagnos*, 341 Wis. 2d 576, ¶21. We will uphold the court's factual findings unless they are clearly erroneous. *Id.* However, we independently apply those facts to constitutional principles. *Id.*

¶12 As an initial matter, Martell does not argue that the circuit court's factual findings are clearly erroneous, and we determine those findings are not clearly erroneous and are supported by the record. On our independent review of those facts as applied to the constitutional principles set forth above, we conclude Schaub had reasonable suspicion to stop Martell's vehicle.

¶13 Specifically, Schaub observed the SUV brake unreasonably hard and partially drive off the side of the road before swerving or "jerking" back into its lane and accelerating again, causing the vehicle behind the SUV to also slam on its brakes. Schaub additionally observed the SUV's passenger side tires drive off of the paved roadway onto the gravel shoulder three times, watched the SUV weaving within its own lane of travel, and determined the SUV's speed was fluctuating to as low as approximately twenty-five miles per hour in a forty-five mile-per-hour zone. Our supreme court has previously acknowledged that a driver weaving within his or her lane of travel might not give rise to reasonable suspicion

when taken alone, but that circumstance can give rise to reasonable suspicion when taken together with other facts and rational inferences from those facts. *Id.*, ¶54.

¶14    In addition, before Schaub started following Martell, a civilian had called law enforcement to complain that Martell had been driving erratically. Notably, Martell neither challenges the tipster's reliability nor asserts that we should omit this fact in our totality of the circumstances analysis. The tipster's report and the other facts discussed in the preceding paragraph were more than sufficient to give rise to reasonable suspicion that wrongful activity might be afoot with regard to Martell's SUV—namely, that he was driving impaired or otherwise could not safely operate the SUV.

¶15    Martell argues the totality of the circumstances "did not rise to the requisite level of reasonable suspicion" for Schaub to initiate a traffic stop based on our supreme court's decision in *Anagnos*. Martell maintains that the facts in *Anagnos* are "similar, though distinguishable" from the facts in his case. In doing so, he appears to argue that the facts in *Anagnos* supporting reasonable suspicion for a traffic stop are the minimum a law enforcement officer must observe when a defendant "was not alleged to have violated the law prior to the stop." Martell contends the totality of the circumstances here falls short of that watermark.

¶16    In *Anagnos*, a law enforcement officer observed Anagnos execute a turn by driving over an elevated median that was five feet, eight inches in width. *Id.*, ¶57. The *Anagnos* court assumed without deciding that maneuver was lawful, but it nonetheless opined an objectively reasonable officer would be "encourage[d] … to further monitor the driver" because "an objectively reasonable officer would conclude that Anagnos's choice to cross that median, rather than

6

turning right and executing a legal U-turn at the break in the median, raised a suspicion that Anagnos was driving in an unusual manner." *Id.*, ¶57.

¶17　The law enforcement officer additionally observed Anagnos accelerate rapidly twice and turn again without signaling. *Id.*, ¶58. Our supreme court determined that the totality of the officer's observations "could confirm to a reasonable officer that there was cause for suspicion" that Anagnos was impaired, while also noting "[t]hat suspicion would reasonably be heightened by the officer's experience that he is more likely to encounter impaired drivers at 1:15 in the morning." *Id.* Thus, the *Anagnos* court concluded the traffic stop was supported by reasonable suspicion of an offense. *Id.*, ¶60.

¶18　We fail to see how *Anagnos* aids Martell's argument; rather, *Anagnos* supports the conclusion that Schaub had reasonable suspicion to stop Martell. Schaub observed materially more facts supporting a reasonable belief that Martell was or would be committing unlawful conduct than the law enforcement officer observed of Anagnos. In all, Schaub presented specific and articulable facts, which, taken together with rational inferences from those facts, gave rise to the reasonable suspicion necessary to stop Martell's vehicle. *See id.*, ¶37. We therefore conclude the traffic stop did not violate Martell's constitutional rights.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.