# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1622-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CM50

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

SARAH J. KATULA-TALLE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Buffalo County: JOSEPH D. BOLES, Judge. *Affirmed.*

¶1 STARK, P.J.[1] Sarah Katula-Talle appeals a judgment of conviction, entered upon her guilty plea to misdemeanor possession of drug paraphernalia. She argues the circuit court erred by denying her motion to suppress evidence obtained

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

during a traffic stop because the police officer lacked the reasonable suspicion necessary to stop her vehicle. We affirm.

## BACKGROUND

¶2 The State charged Katula-Talle with one count of possession of drug paraphernalia, contrary to WIS. STAT. § 961.573, due to evidence found during a traffic stop of her vehicle. She moved to suppress that evidence, arguing that Mondovi Police Department officer Cole Tenold lacked reasonable suspicion to stop her vehicle. The circuit court held a hearing on her motion, at which Tenold testified to the following facts.[2]

¶3 Tenold first had contact with Katula-Talle on February 18, 2018. Tenold was dispatched to a domestic disturbance at which Katula-Talle was present. His department's standard protocol when responding to a domestic disturbance "is to run every party involved through our dispatch center, and what they tell us is the driver's license status, the wants or warrants check and probation status, and if somebody is, per se, suspended or revoked, our dispatch will tell us that."

¶4 Police dispatch notified Tenold on February 18 that Katula-Talle's driving privileges were revoked. Tenold also learned that her revocation was for an incident related to operating a motor vehicle while intoxicated (OWI). Tenold knew a revocation due to OWI generally lasts six months.

¶5 Two weeks later, on March 3, 2018, Tenold observed Katula-Talle drive into a grocery store parking lot. Tenold recognized her from their prior contact

---

[2] We admonish the State for violating WIS. STAT. RULE 809.19(3)(a)2. by failing to provide citations to the appellate record in its response brief. We observe that the assistant district attorney in this case has other matters pending before us, and we caution him that future violations of our appellate rules could result in sanctions. *See* WIS. STAT. RULE 809.83(2).

2

on February 18. Tenold then stopped Katula-Talle's vehicle because he "had previous knowledge" that she "had a revoked driver's license" and that at the time of the stop, her driving privileges had been revoked for approximately two months. Tenold did not, however, check Katula-Talle's driving status on March 3 before he stopped her vehicle. He also did not know precisely when her revocation period started or when she was eligible for reinstatement. Tenold ultimately discovered drug paraphernalia during the stop.

¶6    The circuit court denied Katula-Talle's motion. The court acknowledged that Tenold "could have called and probably made certain" that Katula-Talle's driving privileges were still revoked at the time of the stop. Nonetheless, the court determined his failure to do so

> [d]oesn't detract from the fact that he was given the information he had, which was that she was … [r]evoked two weeks earlier, and that it was an alcohol revocation. I think that's a reasonable suspicion that she was still revoked on [March] 3rd. He may have been wrong, and that would have been easily remedied by … her giving her valid license to him when he pulled her over. But I think there is a reasonable suspicion that [Tenold] had that she was driving while revoked, and so that the stop was proper, and so I deny your motion.

¶7    Katula-Talle subsequently pleaded guilty to the drug paraphernalia charge. She now appeals her conviction.[3]

## DISCUSSION

¶8    The sole issue on appeal is whether Tenold reasonably suspected that Katula-Talle was operating a motor vehicle on March 3, 2018, while her privileges

---

[3] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's guilty plea. *See* WIS. STAT. § 971.31(10).

were revoked, contrary to WIS. STAT. § 343.44(1)(b). Whether there was reasonable suspicion to conduct a traffic stop is a question of constitutional fact, which is a mixed question of law and fact to which we apply a two-step standard of review. *State v. Anagnos*, 2012 WI 64, ¶21, 341 Wis. 2d 576, 815 N.W.2d 675. We will uphold the court's findings of historical fact unless they are clearly erroneous. *Id.* However, we independently apply those facts to constitutional principles. *Id.*

¶9 A traffic stop constitutes a seizure under the Fourth Amendment to the United States Constitution. *See State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634. The Fourth Amendment permits a law enforcement officer to stop a vehicle when the officer has reasonable suspicion to believe a crime or traffic violation has been or will be committed by the vehicle's occupants. *See State v. Houghton*, 2015 WI 79, ¶21, 364 Wis. 2d 234, 868 N.W.2d 143. This standard requires that the stop be based on more than an officer's "inchoate and unparticularized suspicion or hunch." *Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Rather, an officer's reasonable suspicion must be supported by articulable facts indicating that wrongful activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." *Post*, 301 Wis. 2d 1, ¶13.

¶10 Determining whether an officer had reasonable suspicion for a traffic stop is a common sense test that turns on the totality of the facts and circumstances. *Id.* An officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that wrongful activity might be afoot. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125.

4

¶11    Katula-Talle argues Tenold stopped her vehicle on a hunch that her driver's license was still revoked, and, therefore, he lacked the reasonable suspicion necessary to stop her vehicle.  She contends Tenold had neither "affirmative knowledge" nor "any current information" regarding her driving status.  Essentially, Katula-Talle reasons that Tenold's failure to confirm her driving status before stopping her means he lacked the specific and articulable facts necessary for him to reasonably suspect her of wrongful conduct.

¶12    We reject Katula-Talle's argument.  Tenold was not required to be absolutely certain that Katula-Talle's driving privileges were still revoked for him to reasonably suspect that she was driving with a revoked license.  "[T]he requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment ....'" *New Jersey v. T.L.O.*, 469 U.S. 325, 346 (1985) (citation omitted).

¶13    We conclude that, under the totality of the circumstances, Tenold had reasonable suspicion to believe that Katula-Talle had violated WIS. STAT. § 343.44(1)(b) by driving with revoked privileges.  Tenold testified that at the time of the traffic stop, he knew:  (1) Katula-Talle's driving privileges were revoked on February 18, 2018, two weeks before the stop; (2) her driving privileges were revoked due to an OWI-related incident; (3) OWI-related revocations generally last at least six months; and (4) her revocation had been in effect for approximately two months.  Therefore, under the totality of these circumstances, Tenold could reasonably suspect that Katula-Talle's license remained revoked when he saw her driving on March 3.

¶14 Katula-Talle additionally argues that the traffic stop was unreasonable because Tenold did not know "whether it was possible that she could have [had] an occupational license at the time of the stop." We disagree that Tenold was required to confirm whether Katula-Talle had an occupational license before he could have reasonable suspicion to stop her. While Tenold could have reasonably inferred that Katula-Talle had an occupational driver's license when he saw her driving two weeks after learning she had a revoked license, he was not required to draw this inference favoring innocence. *See Nieves*, 304 Wis. 2d 182, ¶14. For the reasons explained above, Tenold could also reasonably infer from the totality of the facts known to him that Katula-Talle was driving while her license was still revoked. Katula-Talle's argument that Tenold could not have had reasonable suspicion to stop her without first confirming whether she had an occupational license therefore lacks merit.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.