COURT OF APPEALS
DECISION
DATED AND FILED

May 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP312**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV788

IN COURT OF APPEALS
DISTRICT IV

CITY OF MONONA,

PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

ERICK J. ERICKSON,

DEFENDANT-APPELLANT-CROSS-RESPONDENT.

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] Erick Erickson appeals a judgment of the circuit court following a bench trial at which the court found Erickson guilty of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

operating with a prohibited alcohol concentration, as a first offense, and separately found that Erickson had unreasonably refused to submit to a chemical test of his breath following his arrest. Erickson challenges the court's denial of his motion to suppress evidence. Erickson argues that there was not sufficient evidence to justify a request by police that he submit to a preliminary breath test (PBT) before his arrest. Erickson also contends that there was not sufficient evidence to support probable cause to arrest him. I reject these arguments and accordingly affirm.[2]

## BACKGROUND

¶2      City of Monona police cited Erickson with operating a motor vehicle while intoxicated in violation of WIS. STAT. § 346.63(1)(a) and operating with prohibited alcohol concentration in violation of § 346.63(1)(b). The police also gave Erickson a notice of intent to revoke his operating privileges for allegedly refusing to submit to a chemical test of his breath after his arrest under Wisconsin's implied consent law. *See* WIS. STAT. § 343.305.

---

[2] The City of Monona cross appeals, but I need not address the cross appeal. Explaining further, the City challenges the circuit court's determination that Erickson was not guilty of operating under the influence of an intoxicant on the ground that there is "no evidence in the record to support a not guilty verdict." The City states that its cross appeal is "protective," by which it means that the cross appeal is intended to preserve an argument that, if Erickson is successful in his appeal of the prohibited alcohol concentration conviction, the City should be allowed to pursue a judgment against Erickson for operating under the influence of an intoxicant and a corresponding sentence. *See State v. McAdory*, 2024 WI App 29, ¶32, 412 Wis. 2d 112, 8 N.W.3d 101, *review granted*, 2024 WI 40, 414 Wis. 2d 187, 15 N.W.3d 24 (discussing municipality's failure to file protective cross appeal in *Town of Menasha v. Bastian*, 178 Wis. 2d 191, 196, 503 N.W.2d 382 (Ct. App. 1993)); *Savich v. Columbia Cnty. Bd. of Adjustment*, 2024 WI App 43, ¶¶19, 84-85, 413 Wis. 2d 140, 11 N.W.3d 160, *review denied*, 2025 WI 8, 18 N.W.3d 704. Because I reject Erickson's challenge to the prohibited alcohol concentration citation, there is no need to reach the City's cross appeal. *See Dickman v. Vollmer*, 2007 WI App 141, ¶3, 303 Wis. 2d 241, 736 N.W.2d 202.

¶3     Erickson was found guilty of both offenses in municipal court. There is no dispute that Erickson timely demanded a hearing on the refusal allegation.  He appealed for a trial de novo in the circuit court.

¶4     In circuit court, Erickson filed a motion to suppress evidence obtained as a result of what he alleged was an unlawful request that he undergo a PBT.  In the alternative, he moved to suppress evidence later obtained following his arrest on the ground that the arrest was unlawful.

¶5     The circuit court held an evidentiary hearing on Erickson's motion. It was established that Erickson entered a retail store on the night of January 28, 2020, and asked to borrow or purchase a shovel to dig his car out of some sort of snow accumulation in a nearby parking lot.  Store employees did not give him a shovel.  A manager of the store testified that, based on observations of Erickson during this encounter, the manager believed that Erickson was drunk, and the manager called the police to report suspicion of an intoxicated driver.

¶6     The two officers who were dispatched in response, Jared Wedig and Landon Flora, testified in pertinent part as follows.  Wedig and Flora went to a parking lot near the store, where the officers encountered Erickson, who was by himself.  Erickson was attempting to use an umbrella to dig a car out of several inches of snow that had accumulated on that portion of the lot.

¶7     Both officers smelled the odor of alcohol on Erickson's breath, noticed that his speech was slurred, and observed that Erickson had parked his car in an unplowed portion of the parking lot, which was well-lit, despite the fact that a significant portion of the parking lot had been plowed.

¶8      The officers requested that Erickson undergo a PBT. Erickson initially consented to do this, but he did not provide a breath sample sufficient to create a meaningful result. The officers continued to talk with Erickson for a time, and then placed him in handcuffs and moved him to the front of one of the officers' squad cars. This was because, according to Wedig, Erickson was "trying [to] play games or at least prolong the process" of determining whether Erickson was impaired for purposes of operating a motor vehicle. The officers requested that Erickson take the PBT again, but he declined. The officers then requested that Erickson undergo field sobriety tests, which he also declined.

¶9      Officers Wedig and Flora both recorded their interactions with Erickson on body cameras. Portions of these recordings were played during the hearing and are preserved in the record on appeal.

¶10     On July 26, 2023, the circuit court issued a written decision denying Erickson's motion. As part of its analysis, the court fully credited the testimony of the store manager and the officers.

¶11     The circuit court held a bench trial on the citations, which also served as the refusal hearing.[3] The store manager and the two police officers again testified, with Officer Flora's testimony now additionally covering events after Erickson's arrest. This included testimony that Flora read to Erickson from an "informing the accused" form, that Erickson refused to submit to a chemical test of his breath, and that Flora then obtained a warrant to test Erickson's blood. A phlebotomist testified regarding a blood sample that she took from Erickson after

---

[3] Erickson moved for a jury trial, which the circuit court denied in a ruling that Erickson does not challenge on appeal.

he was transported by police to an area hospital. Further, an employee of the state crime laboratory testified regarding the testing of the blood sample, which reflected a blood alcohol concentration of .092 grams per 100 milliliters.

¶12    The circuit court found Erickson not guilty of operating while under the influence and guilty of operating with a prohibited alcohol concentration. The court further found that Erickson had refused, after his arrest, to submit to the requested chemical test of his breath and that it was unreasonable for him to do so.

¶13    Erickson appeals.

## DISCUSSION

¶14    As noted, Erickson argues that the officers lacked the necessary level of probable cause to request that he undergo a PBT, and he further argues in the alternative that the officers lacked probable cause to arrest him. I apply the following standards of review to both issues.

¶15    This court will "uphold the trial court's findings of fact unless they are clearly erroneous. Whether those facts satisfy the statutory standard of probable cause is a question of law we review de novo." *County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (citations omitted) (concluding that investigating officer had probable cause to request a PBT).

### I. Request for PBT

¶16    Erickson argues that the City failed to show that the officers had "probable cause to believe" that Erickson was operating under the influence or had a prohibited alcohol concentration, which by statute was required before they could lawfully request that he submit to a PBT. *See* WIS. STAT. § 343.303; *State*

*v. Felton*, 2012 WI App 114, ¶¶7-8, 344 Wis. 2d 483, 824 N.W.2d 871. "Probable cause to believe" is a quantum of proof that is "'greater than the reasonable suspicion necessary to justify an investigative stop … but less than the level of proof required to establish probable cause for arrest.'" *See Felton*, 344 Wis. 2d 483, ¶8 (quoting *Renz*, 231 Wis. 2d at 316). Although it is unclear from Erickson's briefing, I understand his argument to be that the officers violated § 343.303 from the moment that they first requested that Erickson submit to a PBT because they lacked the requisite level of probable cause. I conclude that, when the officers requested that Erickson submit to a PBT, the information that was objectively available to the officers exceeded the amount of evidence necessary to justify that request.

¶17 The following facts support probable cause to believe that Erickson committed a drunk driving offense at the time the officers requested that he submit to a PBT. No one piece of evidence was especially strong or dispositive, but together they easily meet the legal standard. *See State v. Post*, 2007 WI 60, ¶¶36-38, 301 Wis. 2d 1, 733 N.W.2d 634 (weaving within a lane constituted "poor driving" that, accumulated with other relevant facts, supported conclusion that officer had reasonable suspicion of drunk driving).

¶18 **Unusual conduct regarding snow bank**. There is no dispute that Erickson appeared to have driven his car onto an unplowed area of the parking lot, making it necessary for him to dig it out. This was despite the fact that a substantial portion of the well-lit lot had been plowed. Then, he was found trying to dig out the car with an umbrella. All of these facts could reasonably have been viewed as possible indications of impaired judgment due to the effects of overconsumption of alcohol.

¶19 **Smell of alcohol**. The circuit court credited the testimony of both officers, not just one, that they both smelled the odor of alcohol on Erickson's breath. *See* *State v. Kennedy*, 2014 WI 132, ¶¶22-23, 359 Wis. 2d 454, 856 N.W.2d 834 ("an odor of intoxicants" among the facts that can support a finding of probable cause to arrest for a drunk-driving-related crime). Without providing a citation to the record, Erickson refers to the smell of intoxicants on his breath reported by the officers as having been only a "light" smell. But the store manager and officers did not qualify the smell of intoxicants on Erickson's breath as "light." In fact, Officer Wedig testified that the odor was "[f]airly strong," even when Erickson was standing outdoors in cold weather, an environment in which odor typically dissipates more readily than in a vehicle or a room of a structure.

¶20 **Slurred speech**. Both officers testified that Erickson's speech was slurred. The circuit court found that Erickson's speech featured "a mix of shortness of breath and slurring." *See id.* (slurred speech among the relevant facts that can support finding of probable cause to arrest for a drunk-driving-related crime). At the same time, the court credited the testimony of the officers that Erickson's speech was not consistently slurred, only sometimes. This is also consistent with Officer Wedig's testimony that Erickson's speech was generally not difficult to understand. But slurring of speech is one reasonably strong indication of potential impairment, and experience teaches that slurred speech by some persons under some circumstances is not difficult to comprehend.

¶21 **Responses to questions**. The circuit court found that, when Officer Flora asked Erickson if he had been drinking, Erickson "appeared to be evading giving a direct response." For example, in Flora's body camera recording, Erickson can be heard denying that he had had anything to drink, despite the odor of alcohol on his breath. This counts toward meeting the probable-cause-to-

believe standard. *See State v. Babbitt*, 188 Wis. 2d 349, 357, 525 N.W.2d 102 (Ct. App. 1994) (fact that driver of stopped vehicle "consistently displayed an uncooperative attitude and reluctantly complied with the officers' various requests" contributed to conclusion that driver was probably driving under the influence of alcohol).

¶22 Considered together, these facts were more than sufficient to justify a request that Erickson submit to a PBT under WIS. STAT. § 343.303. That is, considering them "in the aggregate," *see State v. Hogan*, 2015 WI 76, ¶37, 364 Wis. 2d 167, 868 N.W.2d 124, I conclude that any reasonable officer in the position of these officers would reasonably suspect that Erickson had operated with a prohibited alcohol concentration.

¶23 Erickson argues that the circuit court erred in finding that his speech was slurred and, when that finding is ignored, the cumulative evidence does not rise to the requisite level of probable cause. In support, Erickson contends that the audio from the officers' body camera recordings provides objective evidence that Erickson did not slur his words—rather, he was at times difficult to understand only because he was out of breath from attempting to dig his car out of the snow using an umbrella.

¶24 Based on my own review of the recordings from both officers, I cannot conclude that it is unreasonable to interpret Erickson's speech as both being affected by his being out of breath and also slurred at times. There may be other reasonable interpretations of Erickson's speech, but this does not establish clear error. *See State v. Sykes*, 2005 WI 48, ¶21 n.7, 279 Wis. 2d 742, 695 N.W.2d 277 (a factual finding is clearly erroneous if "'it is against the great weight and clear preponderance of the evidence'" (quoted source omitted)).

Erickson faults the testimony of the officers, and the circuit court's findings of fact, because specific slurred words were not identified. But this does not establish clear error in finding that Erickson slurred some words. In a similar vein, Erickson emphasizes that, when cross examined about Erickson's slurred speech, the officers declined to characterize the slurring as "moderate[] or heav[y]." For example, Officer Wedig testified that Erickson's speech "was slurred. I don't put a level on it as far as moderate or not." But Erickson does not explain why the court was obligated to discount the officers' testimony regarding slurring merely because they did not characterize the degree of slurring.

¶25    Still on the slurred speech topic, Erickson contends that the circuit court should not have credited the testimony of the officers in part because the officers were unfamiliar with Erickson's normal manner of talking. Erickson questions how the officers could have determined that what sounded to the officers like slurred words might not in fact have been attributable to Erickson's normal speech patterns, given that some people in their everyday speech slur their words more than other people and that Erickson was a stranger to the officers. However, this argument fails because police officers are not required to rule out innocent inferences when assessing whether there is probable cause to believe that a drunk-driving-related offense has occurred. *See State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125 ("an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause"). Inebriation can cause slurred speech, even if slurred speech can also arise from other causes.

¶26    Erickson argues that the circuit court should have generally found the officers to be not credible based on various statements that the officers made to Erickson, but Erickson fails to show any credibility issue that could have arisen

from the statements that he highlights, much less an issue that undermines the court's relevant findings. *See State v. Hughes*, 2000 WI 24, ¶2 n.1, 233 Wis. 2d 280, 607 N.W.2d 621 (circuit court is the "'ultimate arbiter of the credibility of a witness'" and this court will uphold the circuit court's "determination of credibility unless that determination goes against the great weight and clear preponderance of the evidence" (quoted source omitted)). Erickson notes that Officer Flora told Erickson that, if the officers determined that Erickson had "been drinking," then the officers were not going to allow him to "drive away," and also notes that later both officers told Erickson that, if the PBT reflected that he was below the legal limit, they would allow him to drive away. These statements can be easily reconciled. In the first statement, the reference to "drinking" could reasonably be interpreted to mean consuming enough alcohol to put Erickson over the legal limit, and consistent with that, a favorable PBT reading would put him in the clear.[4]

¶27 Erickson accurately observes that the officers here did not observe him to have bloodshot or glassy eyes, nor did the officers observe him to display

---

[4] For the first time in his reply brief on appeal, Erickson makes another argument based on the officers' statements about the possibility of Erickson avoiding detention, characterizing the officers' statements as a "ploy" or a "ruse." The first problem with this argument is that it comes too late. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (appellate courts generally do not consider arguments raised for the first time in an appellant's reply brief for reasons of fundamental fairness). Further, the argument is not well developed or supported. For example, Erickson fails to develop an argument that the circuit court could not reach a contrary interpretation of the officers' words and actions or an argument that, based on these statements, the court was required to disregard other relevant aspects of the officers' testimony.

difficulty with his balance. But this additional evidence was not necessary to establish the requisite level of probable cause.[5]

## II. Probable Cause to Arrest

¶28 Erickson argues that the circuit court should have suppressed evidence that police obtained after the moment when, in his view, he was arrested. Specifically, he contends that the officers lacked probable cause to arrest him when they placed him in handcuffs, at which time one of the officers told Erickson that it was "too late" to provide a PBT. For purposes of this appeal, the City assumes that Erickson was arrested when the officers placed him in handcuffs, and I follow in that assumption. Taking that as the moment of arrest, I conclude that the City has shown that the officers had probable cause to arrest Erickson at that time.

¶29 Our supreme court has explained the probable cause standard in this context as follows:

> Probable cause to arrest for operating while under the influence of an intoxicant refers to that quantum of evidence within the arresting officer's knowledge at the time of the arrest that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. The burden is on the state to show that the officer had probable cause to arrest
>
> The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances. Probable cause is a "flexible, common-

---

[5] Because I conclude that Officer Flora had probable cause to believe that Erickson had committed a drunk driving offense justifying the PBT request, I do not address the City's arguments that Erickson "waived" his challenge to the PBT request and that the appropriate remedy for an improper PBT request in this case is not suppression.

> sense measure of the plausibility of particular conclusions about human behavior." …. In determining whether there is probable cause, the court applies an objective standard, considering the information available to the officer and the officer's training and experience.

*State v. Lange*, 2009 WI 49, ¶¶19-20, 317 Wis. 2d 383, 766 N.W.2d 551 (footnotes, containing citations, omitted).

¶30 The following is additional relevant background reflected on Officer Flora's body camera recording.

¶31 Officer Flora asked Erickson to submit to a PBT, and Erickson appeared to consent. But then Erickson walked around his car to the driver's door, opened it, and sat down in the driver's seat. After handing Officer Flora his driver's license, Erickson reached for a large, clear plastic bottle that appeared to contain water. As Erickson uncapped the bottle, Officer Flora instructed him not to drink from it.[6] Erickson responded that he was thirsty and took a drink lasting several seconds. Erickson then picked up his cell phone from inside the car and began to use it, appearing to scroll through an application. The officers instructed Erickson to stop looking through his phone and to "blow into the tube" for the PBT. Erickson appeared to put his phone away. Erickson then said that he was out of breath. The officers responded that his shortness of breath should not matter for purposes of registering a result in the test. Erickson then apparently failed to provide a sufficiently long and steady breath for the PBT to work.

---

[6] At the motion hearing, Officer Flora testified that, although he assumed that the bottle contained only water, he was concerned that, if it instead contained alcohol, then drinking it could "taint" a PBT sample.

¶32   In the next iteration of efforts by the officers, Officer Wedig held the tube up to Erickson's face so that Erickson could try again to provide a breath sample. Erickson then attempted to get out of the car. Wedig blocked him from getting out of the car. Erickson complained that the officers were violating his rights, took his phone back out, and resumed scrolling through it. Wedig told Erickson that, if he did not cooperate in giving a sufficient breath sample for the PBT, then the officers would ask him to perform field sobriety tests. Wedig predicted that Erickson would fail field sobriety tests if subjected to them, and that this would lead to Erickson's arrest for drunk driving. Erickson took the position that the officers lacked evidence that he had driven on a public roadway, as opposed to the privately owned parking lot. Erickson asked who had called the officers to the scene (despite the fact that the officers had already told him, accurately, that it was the store manager who had called police). Erickson also asked to speak with a sergeant. Wedig instructed Erickson to get out of the car, and the officers placed Erickson in handcuffs.

¶33   The circuit court made relevant findings of fact that included the following: Erickson attempted to retract his initial statement to the officers that he had been driving; he exhibited an "inability to follow police officer commands not to drink a clear liquid"; he displayed "odd behavior in scrolling through his phone while avoiding to answer questions asked of him"; and he appeared nervous and showed "confrontational mannerisms." These findings individually and collectively reasonably support the inference of consciousness of guilt. When they are considered as part of the totality of the circumstances, along with the facts summarized above supporting the PBT request, probable cause to arrest was easily established.

¶34 Erickson contrasts the facts here with those of *Renz*, in which, to repeat, our supreme court determined that an officer had the required degree of probable cause to request the defendant to submit to a PBT. Erickson contends that the *Renz* facts were "far more suspicious" than the facts here, and accordingly, the officers here could not have had probable cause to arrest. In *Renz*, an officer conducting a traffic stop was aware of the following indicia of drunk driving when the officer requested that Renz perform a PBT: the traffic stop took place at 2:00 a.m.; a strong odor of intoxicants came from inside the defendant's car; the defendant admitted to having had three beers; the officer had the defendant undergo field sobriety tests, each of which the defendant was able to "substantially complete," but the officer observed clues of intoxication for some, although not all, of the tests. *See Renz*, 231 Wis. 2d at 296-99, 316-17. The defendant's speech was not slurred. *See id.* at 317. Erickson notes that the court in *Renz* referred to this collection of facts as "exactly the sort of situation in which a PBT proves extremely useful in determining whether there is probable cause for an OWI arrest." *Id.* From this, Erickson argues that *Renz* "effectively held" that the facts in *Renz* were insufficient to establish probable cause to arrest, which, to repeat, is a higher quantum of evidence than "probable cause to believe" needed for a PBT.

¶35 I question whether Erickson properly interprets *Renz* as establishing that facts approximating the level of evidence of drunk driving in *Renz* cannot constitute probable cause to arrest. But setting this point to the side, I am not persuaded that the facts in *Renz* are "more suspicious" than the facts found by the circuit court here. Regarding the court's findings here regarding Erickson's "evasive," "odd," and "confrontational" behavior, Erickson asserts that these findings show only that Erickson was "obstinan[t] and refus[ed] to cooperate with

law enforcement," which he suggests should not count in the analysis. I disagree. When considered in the totality of the circumstances, these findings reasonably support both the specific inference that Erickson was intentionally uncooperative in a manner that reflected a guilty state of mind and the general determination of probable cause that Erickson had driven while intoxicated.

¶36 My conclusion that there was probable cause to arrest Erickson defeats the basis of his challenge to the refusal.

## CONCLUSION

¶37 For all of these reasons, the judgment of the circuit court reflecting the conviction and the court's ruling on the refusal is affirmed.

¶38 No costs awarded on the cross-appeal.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

15